O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH B. BOLDEN and LONNIE L. BOLDEN, JR., husband and wife, and DAVID W. CONTRERAS and DOLORES CONTRERAS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>KB HOME, a Delaware corporation, KB HOME SALES - NORTHERN CALIFORNIA, INC., a California corporation, KB HOME SALES-SOUTHERN CALIFORNIA, INC., a California corporation; COUNTRYWIDE HOME LOANS, INC., a New York corporation ; KB HOME MORTGAGE COMPANY, a California corporation; COUNTRYWIDE MORTGAGE VENTURES, LLC d/b/a COUNTRYWIDE KB HOME LOANS, a Delaware company; BRIAN VANOLI d/b/a VANOLI & ASSOCIATES, an individual; JANE L. BROWN d/b/a BROWN & ASSOCIATES, an individual,<br><br>　　　　　Defendants.<br>_____ | Case No. CV 08-02682 DDP (FFMx)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND**<br><br>[Motion filed on May 27, 2008] |

This matter comes before the Court on Plaintiffs' Motion for Remand. After reviewing the papers submitted by the parties and hearing oral argument, the Court grants the motion.

**I.  BACKGROUND**

   A.  Factual Background

This case arises from Defendants' alleged manipulation of real estate appraisals to inflate home prices paid by Plaintiff customers of KB Home (KB) in California during 2005 and 2006. Plaintiffs are customers that purchased homes from KB. Defendant KB is a developer of residential homes throughout the country. Defendants Countrywide Home Loans, Inc. and Countrywide Mortgage Ventures, LLC ("Countrywide") are mortgage lending companies. Countrywide KB Home Loans is a joint venture whereby Countrywide served as KB's in-house lender.

According to the Complaint, the value of newly built KB Homes declined beginning in the fall 2005. To conceal the declining values, KB and Countrywide KB Home Loans conspired to manipulate prices by generating fraudulent appraisal reports that mislead customers of the homes' actual values. (Compl. ¶¶ 1-6.) Specifically, KB provided false and misleading comparable sales data[1] to appraisers who proceeded to create inaccurate appraisals that inflated sales prices. (Compl. ¶¶ 3-6, 24-34.) Plaintiffs thus closed transactions based on the false appraisals of home values, and could have refused to close on the homes or

---

[1] As used in the Complaint, comparable sales data refers to the sales prices for similar homes. (Compl. ¶ 3.)

2

renegotiated the price but for the false appraisals.[2] (Compl. ¶ 34.)

In their Complaint, Plaintiffs allege the following causes of action for violations of California state law: (1) Cartwright Act, (Cal. Bus. & Prof. Code §§ 16720 et seq); (2) Unfair Competition Law (UCL) (Cal. Bus. & Prof. Code §§ 17200 et seq); (3) Consumer Legal Remedies Act (CLRA) (Cal. Civil Code §§ 1750 et seq), (4) Negligence; (5) Deceit (Cal. Civ. Code § 1710; (6) Unjust Enrichment; and (7) Civil Conspiracy.

B.  Procedural Background

Plaintiffs filed this action in California state court on February 6, 2008. On April 23, 2008, Defendants removed this case to federal court. Plaintiffs' UCL cause of action alleges that

> defendants aforementioned acts and practices [related to appraisals] violate the UCL, including by virtue of violations of the Uniform Standards and Professional Appraisal Practice (USPAP), which are incorporated by reference as the "minimum standard of conduct and performance for a licensee" by California's Real Estate Appraisers' Licensing and Certification Law at Business and Professions Code §§ 11300 et seq. See Business and Professions Code 11319.

(Compl. ¶ 47.)

---

[2] The sales contracts allow customers to refuse to close on a residential home purchase if the property does not appraise at or above the contract price, i.e. "at-value." (Compl. ¶ 23.)

Defendants removed the case on the ground that Plaintiffs' UCL claim "is necessarily federal in character and is completely dependent on the resolution of a substantial and disputed federal question, namely, the proper interpretation of the USPAP." Defendants further stated that the UCL claim requires proof of a violation of "a federal standard - the USPAP - in order [for Plaintiffs] to prevail." (Notice of Removal ¶¶ 19-20.)

Here, Plaintiffs move to remand to state court, arguing that the UCL claim does not trigger federal question jurisdiction, and move to remand to state court. Defendants have filed several opposition briefs to Plaintiff's motion. Defendants raise the following grounds for denying Plaintiff's motion: (1) complete preemption; (2) substantial federal question jurisdiction. The Court will consider each in turn.

**II.  LEGAL STANDARD**

A defendant who seeks to remove a case from state to federal court has the burden of establishing federal subject matter jurisdiction. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). District courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). A district court has authority pursuant to 28 U.S.C. § 1447(c) to remand a case to state court for lack of subject matter jurisdiction. Rains v. Criterion Sys., Inc., 80 F.3d 339, 342 (9th Cir. 1996).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is

presented on the face of the plaintiff's properly pleaded complaint." <u>Balcorta v. Twentieth Century-Fox Film Corp.</u>, 208 F.3d 1102, 1106 (9th Cir. 2000) (citing <u>Caterpiller, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987)). Accordingly, "it is 'settled law that a case may not be removed to federal court on the basis of a federal defense, including a defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties conceded that the federal defense is the only question truly at issue.'" <u>Id.</u> (quoting <u>Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.</u>, 463 U.S. 1, 14 (1983)).

However, the 'artful pleading' doctrine provides, under limited circumstances, that state law claims be recharacterized as federal claims, thereby triggering federal jurisdiction. <u>Lippitt v. Raymond James Financial Services, Inc.</u>, 340 F.3d 1033, 1041 (9th Cir. 2003). A "state-created cause of action can be deemed to arise under federal law (1) where federal law completely preempts state law, (2) where the claim is necessarily federal in character, or (3) where the right to relief depends on the resolution of a substantial, disputed federal question." <u>ARCO Environmental Remediation, L.L.C. v. Department of Health and Environmental Quality of Montana</u>, 213 F.3d 1108, 1114 (9th Cir. 2000) (internal citations omitted) (hereinafter "ARCO").

**III. DISCUSSION**

    A.   <u>Complete Preemption</u>

Generally, there are three types of preemption recognized within the courts: express, field and conflict preemption. Under the three types of preemption, "[f]ederal preemption occurs when:

5

(1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." Engine Mfrs. Ass'n v. South Coast Air Quality Management Dist., 498 F.3d 1031, 1039 (9th Cir. 2007).

Complete preemption is a distinct concept. Complete preemption provides that, in some instances, "the preemptive force of [federal statutes] is so strong that they completely preempt an area of state law. In such instances, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Balcorta, 208 F.3d at 1107 (citations and quotation marks omitted).

Complete preemption only arises in "extraordinary circumstances." Ansley v. Ameriquest Mortg. Co., 340 F.3d 858, 862 (9th Cir. 2003). The Supreme Court has specifically found complete preemption in only three federal statutes: Section 301 of the Labor and Management Relations Act (29 U.S.C. § 185); Section 502 of the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1132); and Sections 85 and 86 of the National Bank Act (12 U.S.C. §§ 85, 86). See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6-11 (2003). The Supreme Court has also explained that the "proper inquiry [for analysis of complete preemption] focuses on whether Congress intended the federal cause of action to be exclusive," Anderson, 539 U.S. at 9 n.5, while the Ninth Circuit has declared that "[t]he test is whether Congress clearly manifested an intent to convert state law claims into federal-question claims." Ansley, 340 F.3d at 862 (quoting Wayne v. DHL Worldwide Express, 294 F.3d

1179, 1184 (9th Cir. 2002)). Simply raising a preemption defense is not equivalent to having complete preemption. A federal law may supply the basis for a preemption defense, without having so broad a preemptive scope as to completely preempt state regulation in a particular area. See, e.g., ARCO, 213 F.3d at 1114 (citing Toumajian v. Frailey, 135 F.3d 648, 655 (9th Cir. 1998)).

With these general principles in mind, the Court turns to whether the FIRREA or the OTS regulation, 12 C.F.R. § 560.2(a), completely preempt Plaintiff's state UCL claim.

### 1. FIRREA

Whether the FIRREA completely preempts state law regulation of real estate appraisals appears to be a question of first impression. In the wake of the savings and loan crisis of the 1980s, Congress passed the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") in response. Congress was responding to the adverse effects "faulty and fraudulent" appraisals had on the financial integrity of lending institutions. More specifically, inflated appraisals created savings and loan failures when property values did not cover defaulted loans. H. Rep. No. 101-54(I), at 311 (1989), reprinted in 1989 U.S.C.C.A.N. 86. Therefore, the FIRREA was designed

> to provide that Federal financial and public policy interests in real estate related transactions will be protected by requiring that real estate appraisals utilized in connection with federally related transactions are performed in writing, in accordance with uniform standards, by individuals whose competency has been demonstrated and whose professional conduct will be subject to effective supervision.

12 U.S.C. § 3331.

The FIRREA authorized federal financial institution regulatory agencies - the Office of the Comptroller of Currency (OCC), the Board of Governors of the Federal Reserve System (Board), the Federal Deposit Insurance Corporation (FDIC) and the Office of Thrift Supervision (OTS) - to "prescribe appropriate standards for the performance of real estate appraisals in connection with federally related transactions under the jurisdiction of each such agency."  12 U.S.C. § 3339; see also 12 C.F.R. § 34.41 (OCC); 12 C.F.R. § 225.61 (Board); 12 C.F.R. § 323.1 (FDIC); 12 C.F.R. § 564.1 (OTS).  These federal agencies required, among other things, that appraisals for "federally related transactions"

> [c]onform to generally accepted appraisal standards as evidenced by the Uniform Standards and Professional Appraisal Practice (USPAP) promulgated by the Appraisal Standards Board of the Appraisal Foundation . . . unless principles of safe and sound banking require compliance with stricter standards. . . .

12 C.F.R. § 34.44 (OCC); 12 C.F.R. § 225.64 (Board); 12 C.F.R. § 323.4 (FDIC); 12 C.F.R. § 564.4 (OTS).

The USPAP are the "generally accepted standards for professional appraisal practice in the United States."  (Pls.' Request for Judicial Notice ("RJN"), Exh. C.)  The Appraisal Foundation is a non-profit organization that establishes standards and qualifications for appraisal practice, including the USPAP. (Pls.' RJN, Exh. A.)  The Appraisal Standards Board, a division of the Appraisal Foundation, "develops, interprets and amends the [USPAP]."  (Pls.' RJN, Exh. B.)  The Appraisal Standards Board most

recently published the 2008-2009 edition of the USPAP, along with guidance materials that include Advisory Opinions that illustrate the USPAP's applicability to specific fact situations and a set of Frequently Asked Questions.  (See Defs.' RJN, Exh. B.)[3]

In addition to establishing the USPAP as the minimum standards of appraisal practice, the FIRREA also provided "[a]ppraisal standards and requirements for using State certified and licensed appraisers in federally related transactions."  12 U.S.C. § 3336.  In requiring "State certified" or "State licensed" appraisers for federally related transactions, 12 U.S.C. §§ 3342-43, 3349, the FIRREA delegated responsibility for certification and licensing of appraisers to the states in accordance with other specified requirements, see 12 U.S.C. § 3345.

To "implement the policy of Congress as expressed in [FIRREA] and to establish a state program to license and certify real estate appraisers," California enacted the Real Estate Appraisers' Licensing and Certification Law of 1990 ("REALCL").  Cal. Bus. & Prof. Code § 11300 et seq.  The REALCL established licensing requirements, and incorporated the USPAP as the "minimum standard of conduct and performance for any licensee in any work or service performed that is addressed by those standards."  Cal. Bus. & Prof. Code § 11319; see also 10 Cal. Code Regs. § 3701 (requiring every REALCL licensee to "conform and observe the [USPAP]").

---

[3] The Court takes judicial notice of the facts contained in the Appraisal Foundation documents and located on the Appraisal Foundation website.  The Court also takes judicial notice of the existence of the 2008-2009 edition of the USPAP.  The Court finds that this information is not subject to reasonable dispute and is capable of accurate and ready determination.  See Fed. R. Evid. 201.

There is no language in the FIRREA that expressly preempts state law, nor does the FIRREA occupy the entire field of real estate appraisal regulation. As is apparent from reviewing the FIRREA, Congress envisioned a regulatory system for real estate appraisals with roles for both the federal government and the states. The FIRREA recognizes a role for states in licensing and certifying real estate appraisers. See 12 U.S.C. 3332 3338. In areas that the states have traditionally regulated, professional licensing being one, there is a strong presumption "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).

Moreover, the FIRREA is clearly delimited to the regulation of "federally related transaction[s]."[4]  The language of the statute unambiguously states that the concern of the drafters was to protect "Federal financial and public policy interests" by requiring appraisals in "connection with federally related transactions. . . ." 12 U.S.C. § 3331. The legislative history further indicates an interest in addressing fraudulent appraisals by federal financial institutions. See, e.g., H. Rep. No. 101-54(I) pp. 291, 292, 302-07 (1989), reprinted at 1989

---

[4] A "federally related transaction" is defined as one that (1) "a federal financial institutions regulatory agency or the Resolution Trust Corporation engages in, contracts for, or regulates" and that (2) requires the services of an appraiser. 12 U.S.C. § 3350; 12 C.F.R. § 564.2(f). In their papers, the parties dispute whether the Countrywide subsidiaries qualify as federally-regulated financial institutions. Because the Court finds that there is no complete preemption, it need not resolve this dispute.

U.S.C.C.A.N. 86 ("The primary purposes of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 are to provide affordable housing mortgage finance and housing opportunities for low- and moderate-income individuals through enhanced management of federal housing credit programs and resources. . . and, enhance the regulatory enforcement powers of the depository institution regulatory agencies to protect against fraud, waste and insider abuse.")  Even as to federally related transactions, the FIRREA does not provide an exclusive federal remedy for unlawful appraisal practices.  See Anderson, 539 U.S. at 9 n.5 (finding that an exclusive federal remedy supports complete preemption).  Accordingly, the Court finds that the FIRREA has not wholly displaced state regulation of real estate appraisals, and thus does not completely preempt Plaintiff's UCL claim.

Because FIRREA neither expressly preempts Plaintiff's state law claim, nor does it completely occupy the same field, the only type of preemption possible based upon the statute is conflict preemption.  "Unlike complete preemption, preemption that stems from a conflict between federal and state law is a defense to a state law cause of action and, therefore, does not confer federal jurisdiction over the case."  ARCO, 213 F.3d at 1114.  It is critical to distinguish a federal statute's complete preemption of a state claim, which is jurisdictional in nature, from the assertion of a preemption defense to the state claim.  The defense itself, while it may ultimately preempt a particular state law claim, does not support federal removal jurisdiction.  Defendants conflate this distinction.  The Court concludes that the FIRREA

does not wholly displace Plaintiff's state law cause of action as to completely preempt it.

### 2. OTS Regulation

"Federal regulations have no less preemptive effect than federal statutes." Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1005 (9th Cir. 2008), (citing Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982)). Defendants appear to argue that the Office of Thrift Supervision ("OTS") regulation pursuant to the Home Owners Loan Act ("HOLA") effects preemption over the field of the lending by federal savings associations, and thus completely preempts state law claims seeking to enforce real estate appraisal standards. In the HOLA, Congress authorized the OTS to issue regulations governing federal savings associations. 12 U.S.C. § 1464. OTS promulgated 12 C.F.R. § 560.2, which provides in relevant part:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section . . . .

12 C.F.R. § 560.2(a).

Again, the distinction between complete preemption and a preemption defense is critical. Defendants' field preemption defense – while it may ultimately prove successful – does not by

12

itself show that Congress intended complete preemption of state lending regulation. Yet Defendants have done nothing more than articulate a field preemption defense. Defendants have not shown that the HOLA exhibits the type of "extraordinary circumstances" to warrant complete preemption. See Ansley, 340 F.3d at 862. In fact, Defendants have not even engaged in the relevant inquiry regarding complete preemption.

To reiterate, the "proper inquiry [for analysis of complete preemption] focuses on whether Congress intended the federal cause of action to be exclusive," Anderson, 539 U.S. at 9 n.5, and "[t]he [ultimate] test is whether Congress clearly manifested an intent to convert state law claims into federal-question claims." Ansley, 340 F.3d at 862 (quoting Wayne v. DHL Worldwide Express, 294 F.3d 1179, 1184 (9th Cir. 2002)). Here, while it is possible that 12 C.F.R. § 560.2 preempts Plaintiffs' UCL claim, HOLA does not provide an exclusive cause of action. See Anderson, 539 U.S. at 9 n.5. Moreover, the plain language of the regulation shows that Congress did not intend for the HOLA to completely preempt all state law lending regulation. In particular, 12 C.F.R. § 560.2(c) specifically exempts particular state laws from the regulation's preemptive scope. A finding of complete preemption is further undermined by the fact that Plaintiff's claims relate to real estate appraisal standards, whereas the HOLA was concerned with the credit activities of federal savings associations. See 12 C.F.R. § 560.2(a) (noting that preemption applies "to state laws purporting to regulate or otherwise affect . . . credit activities").

The Court, therefore, finds that the OTS regulation does not completely preempt state law regulation, and thus will not address

13

the merits of Defendants' field preemption defense. See ARCO, 213 F.3d at 1114 (noting that a federal court lacks jurisdiction to consider a preemption defense on a motion to remand if it determines that there is no complete preemption). The Court cannot conclude that there was an intent to convert UCL claims to federal claims. See Ansley, 340 F.3d at 862. Accordingly, the Court finds that Defendants fail to show that the OTS regulation completely preempts Plaintiff's state claim.

B. <u>Substantial Federal Question</u>

Defendants' additionally base removal on the substantial federal question doctrine. Even if the face of a plaintiff's complaint does not contain claims that "arise under" federal law, the substantial federal question doctrine provides for federal jurisdiction when a state law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." <u>Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 314 (2005).

The Supreme Court addressed the substantial federal question doctrine in <u>Merrell Dow Pharms. Inc. v. Thompson</u>, 478 U.S. 804, 808 (1986), and then in <u>Grable</u>, 545 U.S. at 314. In <u>Merrell Dow</u>, the plaintiffs brought a tort lawsuit in state court against the manufacturer of the drug Bendectin liable for birth defects resulting from mothers' ingestion of the pregnancy. The plaintiffs in <u>Merrell Dow</u> alleged that Bendectin had been "misbranded" in violation of the Federal Food, Drug, and Cosmetic Act, and that the violation created a presumption of negligence. The Supreme Court inquired "whether the incorporation of a federal standard in a

14

1  state-law private action, when Congress has intended that there not
2  be a federal private action for violations of that federal
3  standard, makes the action one 'arising under the Constitution,
4  laws, or treaties of the United States,' 28 U.S.C. § 1331." Id. at
5  805.  In emphasizing that Congress did not provide a private right
6  of action for FDCA violations, the Court inferred the
7  "congressional conclusion that the presence of a claimed violation
8  of the statute as an element of a state cause of action is
9  insufficiently substantial to confer federal question
10 jurisdiction." Id. at 813.  The Court held "that a complaint
11 alleging a violation of a federal statute as an element of a state
12 cause of action, when Congress has determined that there should be
13 no private, federal cause of action for the violation, does not
14 state a claim 'arising under the Constitution, laws, or treaties of
15 the United States.' 28 U.S.C. § 1331." Id. at 817.

16      In Grable, the Supreme Court revisited its holding in Merrell
17 Dow.  The Court determined that a state quiet title claim, premised
18 on the violation of a federal tax lien statute, was removable to
19 federal court because a notice provision in the federal statute
20 raised a substantial federal question that was actually disputed by
21 the parties.  Grable, 545 U.S. at 315.  The Court indicated that
22 "Merrell Dow should be read in its entirety as treating the absence
23 of a federal private right of action as evidence relevant to, but
24 not dispositive of, the 'sensitive judgments about congressional
25 intent' that § 1331 requires.  Id. at 317-18.  The Court still
26 affirmed the analysis of the federal labeling standard at issue in
27 Merrell Dow.  Id. at 317-19.
28

Here, Plaintiffs base their UCL claim for an "unlawful" business practice on Defendants' alleged violation of the USPAP, which is incorporated into both the FIRREA and California's REALCL as the minimum standards of conduct for real estate appraisals. The Court has found only two provisions of the FIRREA that expressly grant a private right of action. See 12 U.S.C. § 1441a(c)(11)(B) (permitting enforcement of lower-income occupancy requirements against purchasers of RTC property); 12 U.S.C. § 1441a(q) (permitting enforcement of the statute's prohibition of discrimination against "whistleblowers").[5] Thus, there is no private right of action under the FIRREA to enforce the USPAP. Plaintiff's state claims, like those raised in Merrell Dow, are based on violations of a "federal standard without a federal cause of action." See Burns Int'l, Inc. V. W. Sav. & Loan Ass'n, 978 F.2d 533, 535 (9th Cir. 1992) (finding no private right of action under the HOLA). The Court finds that the exclusion of a private right of action in the FIRREA to enforce the USPAP, although not dispositive, suggests that Congress did not intend for private litigants to enforce the USPAP in the federal forum.

The Court nevertheless must "examin[e] the importance of having a federal forum for the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts." Grable, 545 U.S. at 318. In Grable, the Supreme Court emphasized the federal interest in the interpretation of federal tax laws and collection of delinquent taxes. Id. at 317.

---

[5] The parties do not discuss the private right of action provisions in the FIRREA or the HOLA, but this information is relevant to the substantial federal question inquiry.

16

Here, while the Court does not discount the federal interest in maintaining trust in real estate appraisal practice, the circumstances are very different from Grable where the federal standard was a tax provision written by Congress. By establishing the USPAP as the federal real estate appraisal standard, Congress and the relevant regulatory agencies chose to delegate articulation of federal appraisal standards to the Appraisal Foundation, a non-governmental body. See 12 U.S.C. § 3331; 12 C.F.R. § 34.44 (OCC); 12 C.F.R. § 225.64 (Board); 12 C.F.R. § 323.4 (FDIC); 12 C.F.R. § 564.4 (OTS). The Appraisal Foundation's Appraisal Standards Board "develops, interprets, and amends the [USPAP]." (Pls.' RJN, Exh. B.) Moreover, Congress did not provide for exclusive federal jurisdiction over the USPAP. In the absence of an exclusive federal jurisdiction provision in the FIRREA and where the federal standard here is one written and interpreted entirely by a non-governmental organization, not Congress or federal regulatory agencies, these circumstances militate against finding a substantial federal issue.[6]

Additional considerations further support Plaintiffs' position that substantial federal question jurisdiction does not apply. The provision at issue in Grable concerned compliance with a notice provision that was irreducibly a federal standard. The USPAP, in contrast, is incorporated not only in federal law, but also in

---

[6] In their papers and at oral argument, Defendants pointed to California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831 (9th Cir. 2004) and Sparta Surgical Corp. V. Nat'l Assoc. Of Sec. Dealers, Inc., 159 F.3d 1209 (9th Cir. 1998), both of which found a substantial federal question where the federal standards at issue were accompanied by exclusive federal jurisdiction provisions. Those cases are inapposite here because there is no exclusive jurisdiction provision in the FIRREA.

17

California's real estate law. Moreover, unlike the limited number of quiet title actions based on federal tax provisions noted by the Supreme Court in <u>Grable</u>, it is not uncommon for UCL claims to borrow from federal law.  A UCL claim based on USPAP violations is thus similar to the federal branding standard in <u>Merrell Dow</u> used to show negligence per se.  There is a high probability that accepting Defendants' position would significantly increase the number of state law cases removed to federal court involving UCL claims.  Even though UCL claims are no stranger to the federal courts, this is no reason to adopt a position that encourages the relationship.  Finally, Defendants fail to show that any federal issue presented by the USPAP is so substantial as to establish federal jurisdiction.[7]  The Court, therefore, finds that remand is appropriate.

Even assuming that Plaintiff's reliance on the USPAP is a federal issue, federal jurisdiction does not attach because Plaintiff's UCL claim is based on alternative state and federal theories.  To allege a UCL claim for wrongful real estate appraisal practices, Plaintiffs have to show either an "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200; <u>see</u> <u>also</u> <u>Cel-Tech Communs., Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999) ("Because . . . section 17200 is written in the disjunctive, it establishes three varieties of

---

[7] Defendants assert that provisions of the USPAP are actually disputed without explaining the nature of the dispute, opting for a generic reference to the USPAP.  Even though there may be a judicial application of the USPAP to the facts of this case, this does not show the need for interpretation of the USPAP's terms.  Courts typically apply standards to particular fact situations, and state courts are capable of making those determinations.

18

unfair competition-acts or practices which are unlawful, or unfair, or fraudulent.").

Here, Plaintiffs allege an unlawful business practice based upon the USPAP, but also allege a fraudulent business practice without reference to the USPAP.  If a plaintiff's state claim "can be supported by alternative and independent theories - one of which is a state law theory and one of which is a federal law theory - federal question jurisdiction does not attach because federal law is not a necessary element of the claim." <u>Rains</u>, 80 F.3d at 346 (9th Cir. 1996); <u>see</u> <u>also</u> <u>Lippitt</u>, 340 F.3d at 1043.  The Court finds that Plaintiffs' Complaint may be read to have alleged a UCL claim on the independent theory of a fraudulent business practice, (<u>see</u> Compl. ¶ 49), and there is thus no federal jurisdiction.[8] This provides an alternative basis for rejecting Defendants' contention that the substantial federal question doctrine applies here.

**IV. CONCLUSION**

The Court finds that neither the FIRREA nor the OTS regulation, completely preempt Plaintiff's state UCL claim. The Court also finds that there is no basis for substantial federal

---

[8] KB argues at length in their opposition regarding the distinction between claims, counts, and legal theories.  This discussion does not alter the Court's conclusion.  Business and Professions Code section 17200 states in relevant part: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice. . . ."  The claim is for unfair competition.  Here, Plaintiffs alleges two independent theories of unlawful business practices and fraudulent business practices.

19

question jurisdiction.  The Court GRANTS Plaintiffs' motion.  The Court REMANDS this action the California state court.

IT IS SO ORDERED.

Dated: July 24, 2008

_____
DEAN D. PREGERSON
United States District Judge